IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ALEXANDER JIGGETTS | * | |
| Plaintiff | * | |
| v | * | Civil Action No. JFM-15-3270 |
| DR. CHIYENE EKOH | * | |
| Defendant | * | |

\*\*\*

## MEMORANDUM

Pending in the above-entitled civil rights action is defendant's motion to dismiss or for summary judgment. ECF 4. Plaintiff was advised of his right to file an opposition response and of the consequences of failing to do so. ECF 5. Plaintiff has failed to oppose the motion which shall be construed as a motion for summary judgment and shall be granted for the reasons stated below.

### Plaintiff's Claims

Plaintiff Alexander Jiggetts ("Jiggetts") is a patient at Spring Grove Hospital where he is involuntarily committed following a finding that he was not competent to stand trial on criminal charges pending in both Baltimore City and Baltimore County. *See* ECF 1 at p. 3; ECF 4-1 at p. 2. Jiggetts alleges in his complaint that Dr. Chiyene Ekoh, a psychiatrist at Spring Grove and the only named defendant in this case, violated his rights by improperly medicating him over his objection. Jiggetts states that either Ekoh or another member of the staff have told other patients to fight Jiggetts so that a reason to force medicate Jiggetts will be established. As an example, Jiggetts states that "on October 12, 2015, [Ekoh] or staff pumped up a patient to fight me whom I didn't know" resulting in a 72 hour emergency medication order. ECF 1 at p. 1. While Jiggetts was forced to take medication, he claims the other patient who assaulted him suffered no

consequence for his actions. Jiggetts further claims that the applicable Maryland state statute does not permit 72 hour emergency medication. ECF 1 at p. 1.

Jiggetts further alleges that Ekoh said Jiggetts was a danger and a threat to society for simply defending himself and because he will not consent to taking medication. He states that Ekoh told him that if he does not take his medication Jiggetts will never be released. Jiggetts claims that when he takes the medication prescribed for him his thoughts get disorganized, he hallucinates, feels dizzy and weak, his body slows down, and he experiences excessive sleepiness. Jiggetts asserts that Ekoh never discussed the side-effects of the medications with him. ECF 1 at p. 1.

Jiggetts states that when the fight occurred he was trying to "get the one guy off me who attacked me" when another man came over and held Jiggetts down, allowing his original assailant to continue hitting Jiggetts. ECF 1 at p. 1. Jiggetts states that "everyone" claimed that Jiggetts started the fight. *Id.* at p. 2. Ekoh told Jiggetts months before the fight that if he stayed out of trouble he would not have to take medication. Jiggetts alleges, however, that Ekoh kept telling him he had lice and accusing him of not bathing. He also claims that Ekoh mentioned Jiggetts' appeals of staff decisions to the court, but does not mention appeals filed by other patients. Additionally, Jiggetts takes issue with Ekoh allowing someone to press charges against Jiggetts. ECF 1 at p. 2.

Jiggetts also asserts that Ekoh took issue with the fact that Jiggetts was fasting and forced medicated Jiggetts in an effort to force him to start eating again. He claims that medicating him when he has not eaten is Ekoh's attempt to kill him and violates his constitutional rights. ECF 1 at p. 2. As relief, Jiggetts seeks to enjoin Ekoh from ordering medication over Jiggetts' objection. *Id.* at p. 3.

**Defendant's Response**

Defendant Ekoh provides an affidavit under oath stating that since his arrival at Spring Grove on December 3, 2013, Jiggetts has occasionally agreed to take medication on an emergency basis, but for the most part has refused to take prescribed medication. ECF 4 at Ex. 2, ¶¶ 6 and 8. His behavior during his commitment at Spring Grove has been disruptive and, at times, violent.

On January 14, 2014, Jiggetts threw his roommate's belongings around the room, could not be redirected by staff, and refused an offer for oral emergency medication. Instead, Jiggetts kept repeating to the charge nurse, "I don't want to have sex with you" and called his doctor by the wrong name. Eventually, Jiggetts agreed to receive an injection of medication after the incident. ECF 4 at Ex. 2, ¶ 9 and Ex. 3.

On December 15, 2014, Jiggetts was transferred to another unit at Spring Grove. At this time, Ekoh became his treating psychiatrist. Despite the change in his surroundings, Jiggetts continued to display aggressive behavior. On the day after his transfer, Jiggetts harassed a staff member by trying to persuade him to assist Jiggetts in escaping from the hospital. The following day, Jiggetts continued his harangue by offering the same staff member $1500 to help him escape. ECF 4 at Ex. 2, ¶¶ 10 and 11.

On December 21, 2014, Jiggetts telephoned 911 three times to report Ekoh for trying to brainwash him through witchcraft and voodoo. Jiggetts continued this behavior for several days. Jiggetts also chased another patient from the bathroom with his fist and threatened staff members who tried to intervene in the conflict. Jiggetts' threatening behavior included violently banging on the nurses' station window and accusing staff of conspiring against him and engaging in voodoo. ECF 4 at Ex. 2, ¶ 13.

In addition to his overt behavior, Jiggetts' self-care declined after he was transferred to the new unit. Jiggetts did not want to shower, change clothes, cut his hair, or otherwise maintain his personal hygiene. Jiggetts became infected with lice which Ekoh avers was a direct result of his refusal to maintain his hygiene. ECF 4 at Ex. 2, ¶ 20.

On December 28, 2014, Jiggetts aggressively threatened other patients in an attempt to pick a fight while waiting in line to receive medication. The following day Jiggetts again harassed another patient and tried to provoke a fight, requiring staff to intervene. Jiggetts then splashed water on another patient and made threats to staff members. ECF 4 at Ex. 2, ¶ 15.

On January 2, 2015, Jiggetts attempted to provoke a fight with a member of the staff prompting Ekoh to prescribe a 72-hour emergency medication order in an effort to protect Jiggetts, other patients, and staff. Following the 72-hour period, Ekoh prescribed non-emergency antipsychotic medication for Jiggetts to treat his psychosis and aggression, but Jiggetts refused to take the medication voluntarily. Ekoh avers that the 72-hour medication order was prescribed pursuant to Md. Code Ann., Health Gen. §10-708(b)(1) as well as hospital policy. ECF 4 at Ex. 2, ¶¶ 18 and 19.

On January 15, 2015, a clinical review panel was convened pursuant to Md. Code Ann., Health Gen. §10-708 to consider Ekoh's recommendation that Jiggetts should receive continuing medication. In order to control Jiggetts' delusions and demonstrated aggression toward patients and staff, the panel approved involuntarily medicating Jiggetts pursuant to §10-708(g) of the Code. Jiggetts appealed the panel's decision for consideration by an Administrative Law Judge ("ALJ"). ECF 4 at Ex. 2, ¶ 22.

On January 20, 2015, Jiggetts violently attacked another patient by punching him repeatedly in the face while waiting for the hearing on his appeal to the ALJ. Jiggetts explained

his attack on the other patient to Ekoh stating that he believed the patient was a member of the Black Guerilla Family, an infamous prison gang, and that the patient was after Jiggetts. As a result of this assault, Jiggetts was placed on one-on-one supervision status wherein a member of the staff shadowed him everywhere he went. Notwithstanding that supervision, Jiggetts continued to threaten other patients and accused them of exercising voodoo against him. ECF 4 at Ex. 2, ¶ 23.

After a hearing on January 22, 2015, the ALJ issued a decision affirming the clinical review panel's decision to involuntarily medicate Jiggetts. ECF 4 at Ex. 8. Jiggetts appealed the ALJ's decision to the Circuit Court for Baltimore County where the decision was again affirmed by order dated February 11, 2015. *Id.* at Ex. 9.

Involuntary medication is administered by intramuscular injection. To avoid the use of injections, Jiggetts agreed to take medication orally and his behavior improved and he did not assault other patients. Ekoh opines, however, that Jiggetts' agreement to take medication is only possible when there exists an order for involuntary administration of medication. Thus, when the 90-day period permitted for involuntary medication under Maryland law expired, Jiggetts again refused to voluntarily take his medication. Given the notable improvement in Jiggetts' behavior while taking medication, Ekoh recommended continuing the order for involuntary medication to another clinical review panel on April 14, 2015. ECF 4 at Ex. 2, ¶¶ 26 – 28.

The clinical review panel agreed with Ekoh's recommendation and Jiggetts appealed the decision for review by an ALJ. The ALJ again upheld the panel's decision on April 21, 2015. ECF 4 at Ex. 10. Jiggetts appealed the decision of the ALJ to the Circuit Court for Baltimore County and the decision was affirmed on May 12, 2015. *Id.* at Ex. 11.

While under an order of involuntary medication, Jiggetts' behavior improved to the point

that the Spring Grove forensic psychologist evaluated Jiggetts as competent to stand trial for his criminal charges. ECF 4 at Ex. 2, ¶ 30 and Ex. 6. When Jiggetts appeared in court on June 18, 2015, his inappropriate behavior prompted the court to remand him for further evaluation and competency services. ECF 4 at Ex. 2, ¶ 30. Based on the court's request, the forensic psychiatrist re-evaluated Jiggetts on June 23, 2015, listened to a recording of the court proceedings, and concluded Jiggetts was not competent to stand trial and that he required continued therapy. ECF 4 at Ex. 6.

The most recent involuntary medication period for Jiggetts expired on July 14, 2015. On that date, Jiggetts stopped taking his medicine and his hygiene and behavior began to again deteriorate. ECF 4 at Ex. 2, ¶ 32

Since September 24, 2015, Jiggetts has continued to refuse all medications and has become more agitated, pacing the hallways daily. In addition, Jiggetts became increasingly confrontational which culminated in yet another attack on a patient on October 12, 2015. While walking down the hallway, Jiggetts bumped into another patient, became enraged, and repeatedly punched the other patient in the face. When a third patient tried to intervene and stop the fight, Jiggetts lashed out against that patient and bit him on the forearm and thumb. ECF 4 at Ex. 2, ¶ 32.

Following the October 12, 2015 assault, an emergency dose of medication was administered to Jiggetts pursuant to hospital policy and Md. Code Ann., Health-Gen. §10-708(b)(1). Ekoh then requested a clinical review panel to approve an order to involuntarily medicate Jiggetts. ECF 4 at Ex. 2, ¶33.

A clinical review panel convened on October 22, 2015, and approved an order for involuntary medication for Jiggetts. ECF 4 at Ex. 12. Jiggetts appealed the decision to an ALJ,

who upheld the panel's decision in a decision dated October 29, 2015. ECF 4 at Ex. 13. Jiggetts' appeal of the ALJ's decision to the Circuit Court for Baltimore County resulted in a November 25, 2015 decision affirming the involuntary medication decision. *Id* at Ex. 14.

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

As an involuntarily committed patient in a State psychiatric facility, Jiggetts has a "'significant constitutionally protected liberty interest in avoiding the unwarranted administration of antipsychotic drugs.'" *Sell v. United States*, 539 U.S. 166, 178 (2003), quoting *Washington v. Harper*, 494 U.S. 210, 221 (1990). "[W]hen the purpose or effect of forced drugging is to alter the will and the mind of the subject, it constitutes a deprivation of liberty in the most literal and fundamental sense." *United States v. Bush*, 585 F.3d 806, 813 (4th Cir. 2009). "Involuntarily committed mental patients retain a liberty interest in conditions of reasonable care and safety and in reasonably nonrestrictive confinement conditions." *Youngberg v. Romeo*, 457 U.S. 307, 324 (1982). The Fourteenth Amendment ensures that states will provide not only for the medical needs of those in penal settings, but for anyone restricted by a state from obtaining medical care on his own. *See DeShaney v. Winnebago*, 489 U.S. 189, 200 (1989); *Youngberg*, 457 U.S. at 324.

Jiggetts' allegations against Ekoh appear to be a product of his mental illness as there is no evidence to support a claim that Ekoh used involuntary medication to punish or retaliate against Jiggetts. There is ample evidence that his involuntary medication was necessitated by his aggressive and disruptive behavior. Against the backdrop of Jiggetts' assaultive behavior, his liberty interest in remaining free of unwanted medication was properly overridden. *See Harper*, 494 U.S. at 225.

Moreover, Jiggetts' received the procedural protections required before a protected liberty interest may be infringed. Jiggetts was provided notice, the right to be present at an adversarial hearing, and the right to present and cross-examine witnesses each time an order for his involuntary medication was issued. The process for review of the decisions to involuntarily

medicate Jiggetts comports with procedural due process. *See Harper*, 494 U.S. at 235.

Based on the undisputed record evidence, defendant Ekoh is entitled to summary judgment in his favor. A separate order follows.


_3/28/16_
Date

J. Frederick Motz
United States District Judge

BY _____ DEPUTY
CLERK'S OFFICE
AT BALTIMORE
2016 MAR 28 PM 3:56
U.S. DISTRICT COURT
DISTRICT OF
FILED